# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

### SHREVEPORT DIVISION

| | |
|---|---|
| **CHRISTOPHER HATCHEL** | **CIVIL ACTION NO.  5:21-CV-03361** |
| **VERSUS** | **JUDGE S. MAURICE HICKS, JR.** |
| **TRINITY OPERATING (USG) LLC** | **MAG. JUDGE KAYLA D. MCCLUSKY** |

## REPORT AND RECOMMENDATION

Before the undersigned Magistrate Judge, on reference from the District Court, are two motions filed by Plaintiff Christopher Hatchel ("Hatchel"): (1) Motion for Leave to File Third Amended Complaint for Damages [doc. #102] and (2) Motion to Remand [doc. #103].  Both motions are opposed.  [docs. #111, 112].

For reasons assigned below, **IT IS ORDERED** that the Motion for Leave to File Third Amended Complaint for Damages is **GRANTED**.  **IT IS FURTHER RECOMMENDED** that the Motion to Remand be **GRANTED**.

## Background

Hatchel initiated this action for damages against Defendant Trinity Operating (USG), LLC ("Trinity Operating") on August 16, 2021, in the First Judicial District Court, Caddo Parish, Louisiana.  [doc. #1-1].  Trinity Operating removed the action to this Court on September 21, 2021, based on diversity jurisdiction.  [doc. #1]. On February 6, 2024, Hatchel filed a First Amended Complaint that added Defendants New Tech Global Ventures, LLC ("New Tech"), Workrise Technologies, Inc. ("Workrise"), and Palms Insurance Company Limited ("Palms Insurance").

[doc. #54]. During a telephone status conference with the undersigned on October 17, 2024, Hatchel's counsel informed the Court and Defendants that he anticipated seeking leave to amend the First Amended Complaint to name both diverse and non-diverse parties. [doc. #88]. It was agreed that Hatchel would first move to add the diverse parties by October 25, 2024, and once that motion was resolved, he would move to add the non-diverse parties. *Id.* Hatchel sought leave to amend, no opposition was filed, and, with leave of Court, on November 18, 2024, he filed his Second Amended Complaint. [doc. #92]. Therein, three new diverse defendants were added: Lealon Travis Simmons ("Simmons"), L.T. Simmons Consultants, LLC ("L.T. Simmons"), and Ben Saunders ("Saunders"). *Id.* at pp. 1-2.

In his Second Amended Complaint, Hatchel alleges that on or about September 24, 2020, Trinity Operating and its agents and employees were conducting operations on four unit wells. *Id.* at p. 2. Trinity either owned the units and wells or co-owned the units and wells. *Id.* at p. 3. Trinity also operated the wells and units, and either owned or co-owned the land and leases connected with the wells. *Id.*

Trinity contracted with New Tech to supply a Well Site Superintendent. *Id.* at pp. 3-4. New Tech, through its superintendent, was responsible for overseeing all operations, including operations in connection with the wells. *Id.* at p. 4. The superintendent supplied by New Tech was Donnie Miller. *Id.*

Trinity also contracted with Workrise to supply a Day Well Site Leader and a Night Well Site Leader. *Id.* at p. 4. Workrise provided Simmons and his consulting firm, L.T. Simmons, as the Night Well Site Leader. *Id.* at pp. 4-5. These leaders were responsible for overseeing day-to-day aspects of the well site operation and ensuring that all safety protocols were followed. *Id.* at p. 5. Simmons was supposed to report directly to Miller, and together they were responsible for

2

overseeing day-to-day aspects of the operations. *Id.* Simmons and Trinity also contracted with Workrise to supply a Health, Safety, and Environment ("HSE") consultant, and Workrise provided Saunders. *Id.* at p. 6.

On September 24, 2020, Workrise, Simmons, Saunders, New Tech, and/or Trinity required that a drilling rig be moved from one well to another for the purpose of conducting rotary drilling operations. *Id.* at pp. 6-7. This process of moving a drilling rig is called "walking" or "skidding." *Id.* at p. 7. Before the rig was moved, Trinity, New Tech, Simmons, Saunders, and/or Workrise allegedly failed to determine that the oilfield equipment was properly placed, and they failed to properly design and layout the location. *Id.* at pp. 7-8. As a result, there was not room to safely move the rig. *Id.* at p. 8. They further allegedly failed to conduct a mandatory safety meeting to discuss the proper procedures for moving the rig and failed to inspect the rig and its equipment. *Id.* Components of the rig had to be partially altered to ensure that the rig could pass by other equipment. *Id.* at p. 9.

In connection with the skidding of the drilling rig, Trinity Operating hired Precision Drilling Corporation ("Precision"). *Id.* Plaintiff Hatchel was an employee of Precision Drilling and was on the location. *Id.* While the rig was being skidded, components of the rig "hung up" on the drilling mats creating extreme pressure. *Id.* The hung-up rig components came loose, striking Hatchel in his lower right leg and pinning him. *Id.* As a result, Hatchel's lower right leg was crushed and ultimately had to be partially amputated after numerous surgeries to repair his leg were unsuccessful. *Id.*

On January 3, 2025, Hatchel filed a Motion for Leave to File Third Amended Complaint for Damages. [doc. #102]. Hatchel seeks to add Donald Dale James Miller ("Miller")[1] and D&D Miller Consulting, LLC ("D&D") as non-diverse defendants. *Id.* at p. 1. Hatchel asserts that he has not been dilatory in seeking this amendment, as the roles of Miller and D&D were unknown to him until he had the opportunity to take the deposition of Miller in September of 2024. *Id.* at p. 2. Additionally, Hatchel argues that he would be significantly injured if amendment was not allowed as he would be forced to litigate this action in two separate courts. *Id.* at p. 3.

The Third Amended Complaint would add Miller and D&D as new Defendants, along with asserting new allegations regarding Miller and D&D. The proposed pleading indicates that New Tech contracted with Miller and D&D to provide well site superintendent services. [doc. #102-2, p. 4]. Miller was responsible for overseeing all operations on the location, including all operations conducted in connection with the wells. *Id.* This responsibility included ensuring that all work was carried out safely, prudently, and in compliance with all safety rules. *Id.* Further, under the terms of the Master Services Agreement with Trinity Operating, Miller and New Tech, Miller had a duty "for the prevention of accidents and incidents . . ." *Id.* at p. 4. Miller and New Tech's duties to oversee the operations included the duty to stop work if any unsafe practices or conditions were observed. *Id.* at p. 5.

Hatchel also asserts that "New Tech, through its Superintendent, [Miller], and Workrise, through its night well site leader, [Simmons], and its HSE consultant, [Saunders], had a duty to ensure the safety of all persons at the [location]." *Id.* at p. 8. Trinity Operating, New Tech, Miller, Simmons, Saunders, and/or Workrise did not properly design and layout the location. *Id.* at pp. 8-

---

[1] Donald Dale James Miller is the "Donnie Miller" identified in Hatchel's Second Amended Complaint.

4

9.  Further, they did not determine that the oilfield equipment was properly placed and failed to conduct a proper safety meeting. *Id.* at p. 9. Those same defendants also failed to inspect the rig and its equipment. *Id.* at p. 10. Hatchel states that the accident was caused by the negligence of Trinity Operating, New Tech, Miller, Simmons, Saunders, and Workrise by:

A.  Failure to properly design the LOCATION;
B.  Failure to properly place equipment on the LOCATION;
C.  Failure to require that equipment was properly placed on the LOCATION;
D.  Failure to conduct a proper safety meeting before the rig was moved on the LOCATION;
E.  Failure to identify potential hazards in moving the rig on the LOCATION;
F.  Failure to inspect the rig and its equipment on the LOCATION;
G.  Failure to follow Defendants' own safety policies and procedures;
H.  Failure to stop work when Defendants knew or should have known that drilling operations were unsafe;
I.  Failure to establish sufficient policies and procedures regarding operations on the LOCATION;
J.  Failure to properly train their employees and/or agents concerning operations on the LOCATION;
K.  Allowing the rig to be moved when conditions were unsafe;
L.  Failure to follow safe work practices and procedures;
M.  Conducting the operations in and improper and careless manner;
N.  Failure to take precautionary measures; and
O.  Failure to avoid the incident sued on herein.

*Id.* at pp. 11-12.

Also on January 3, 2025, Hatchel filed a separate, but related Motion to Remand. [doc. #103]. Hatchel asserts, that if added, Miller and his consulting company, D&D, will destroy diversity because they are both domiciled in Louisiana. *Id.* at p. 1. Miller testified in his deposition that his residence is in Louisiana, and he intends to remain there. *Id.* D&D has listed the same address as Miller as its domicile address in its Louisiana Secretary of State business filing. *Id.*

Consistent with his Motion for Leave to Amend, in his Motion to Remand, Hatchel points to information obtained at Miller's September 23, 2024 deposition. At that time, Hatchel learned of Miller and D&D's roles as independent contractors hired by New Tech to assist in the safety of

the drilling operation. (Memo in Support of M/Remand [doc. #103-1, p. 2]). Following that deposition, Hatchel planned to have Miller, D&D, Saunders, Simmons, and L.T. Simmons added as defendants to his suit. *Id.* at p. 3. During a status conference with the undersigned on October 17, 2024, these new parties were discussed. *Id.* It was determined that the diverse parties should be added first, and once they were in the suit, Hatchel could file his amended complaint to add the non-diverse parties. *Id.*

Hatchel contends that Miller and D&D were hired to provide oversight of drilling operations and to ensure the safety of everyone working on the well-site. *Id.* at p. 4. As such, they are directly responsible for ensuring that the rig could be moved safely. *Id.* Additionally, every defendant named in the case thus far has asserted a third-party contributory negligence defense. *Id.* Hatchel argues he should not have to go to trial with the prospect of defendants placing blame on Miller and D&D, and they not be there to defend themselves or answer in damages for any fault attributed to them. *Id.* Hatchel further asserts that he would be injured by not having all defendants included in a single case, based on a single set of operative facts, so that the law can be applied consistently. *Id.* at p. 5. Hatchel also points out that if he is prohibited from adding Miller and D&D, it would effectively destroy his claim against them because the statute of limitation for his claims has run. *Id.* at p. 6.

### (a) New Tech's Opposition

On January 27, 2025, New Tech filed an opposition to the motion to amend and the motion to remand. [doc. #111]. New Tech argues that Miller and D&D are being added solely to destroy diversity jurisdiction. *Id.* at p. 6. In Trinity Operating's initial disclosures provided on August 10, 2023, Miller was identified as the superintendent. *Id.* In Trinity Operating's answers to interrogatories provided on December 19, 2023, Trinity Operating identified Miller. *Id.* at p. 7.

Additionally, New Tech asserts that Hatchel is not able to assert a colorable claim against Miller or D&D. *Id.* at p. 9. New Tech argues that certain facts were omitted from Hatchel's proposed amended complaint and must be considered by the Court in ruling on these two pending motions. *Id.* at p. 10. Trinity Operating was the operator of the wells, and, at the time of the accident, Trinity Operating had three drilling rigs. *Id.* New Tech contracted with Miller and provided him to Trinity Operating. *Id.* Miller was the well site superintendent and was supervising multiple sites. *Id.*

Trinity Operating also contracted with Workrise to have both a day and a night supervisor at each rig site. *Id.* The day well site supervisor was TJ Dean, and the night well site supervisor was Simmons. *Id.* Trinity Operating also contracted with Workrise to provide Saunders, a HSE contractor. *Id.* Miller testified at his deposition that he could only be responsible to prevent accidents to an extent because he could not be everywhere. *Id.* In his absence, the well site supervisors were responsible to ensure operations were conducted safely. *Id.* at pp. 10-11.

The accident occurred on September 24, 2020, at 11:00 p.m. *Id.* at p. 11. The rig walking operation was a Precision operation using only their personnel and equipment. *Id.* At the time of the accident, Miller was working on Precision Rig 616 conducting pilot well logging operations. *Id.* at p. 12. Miller was notified of the incident when Simmons called him. *Id.* It took Miller approximately eleven minutes to arrive at Rig 109 from Rig 616. *Id.* At the time of the accident, Miller's duties were to assist with the downhole operations. *Id.* Miller was expected to supervise the well logging activities as Trinity Operating had other contractors on the rig walk operation, and the rig walk operation was "wholly governed by Precision." *Id.* at p. 13. Miller also testified that Simmons could do everything within the drilling program and could make high-level decisions in the field without him. *Id.*

New Tech asserts that the accident occurred after Precision modified equipment, and as the rig was walking, it got hung up on the rig mat. *Id.* at p. 14. There is no evidence that Miller was notified before the rig walk that Precision modified its equipment. *Id.* at p. 15. However, Miller testified that if he had been there to observe the rig walk, he would have exercised stop work authority. *Id.* at p. 14. Accordingly, New Tech contends that Hatchel has no reasonable possibility of recovery against Miller and D&D under a negligence theory as any duty Miller had to supervise the rig walk was delegated to Simmons. *Id.* at p. 16.

New Tech also contends that the *Hensgens* factors support denial of the motion to amend and motion to remand. *Id.* First, the purpose of the amendment is to defeat federal jurisdiction. *Id.* New Tech does not take the position that Hatchel was dilatory; however, Hatchel did have ample time to add Miller and D&D as defendants after Trinity Operating's initial disclosures. *Id.* at p. 17. Further, Hatchel will not be significantly injured because the claims against Miller and D&D are futile. *Id.* Lastly, Defendants have a strong interest in maintaining the current forum as this Court has handled all pre-trial proceedings and motions. *Id.* at pp. 17-18.

   *(b) Trinity Operating and Palms Insurance's Opposition*

On January 27, 2025, Trinity Operating and Palms Insurance filed an opposition to the motion to remand. [doc. #112]. They argue that D&D is a limited liability company; thus, its domicile is that of its members. *Id.* at p. 1. Trinity Operating and Palms Insurance argue that D&D is a Texas limited liability company, and the address Hatchel referred to in the Louisiana Secretary of State is incorrect. *Id.* at p. 2. The current listing for D&D is for a prior company, and the listing is inactive. *Id.* While Miller did testify that he is in the process of moving back to Louisiana, his current address is in Cypress, Texas. *Id.* Since Miller testified that he currently resides in Louisiana, but gave a Texas address when asked, he could still be a citizen of Texas despite living

in Louisiana. *Id.* at p. 3. Trinity Operating and Palms Insurance argue that there is nothing in the record to show that Miller's citizenship is Louisiana. *Id.*

### (c) Hatchel's Reply

On February 3, 2025, Hatchel filed a reply in support of his motions. [doc. #113]. First, Hatchel argues that Miller is domiciled in Louisiana as he physically resides there and has the permanent intent to remain as demonstrated in his deposition. *Id.* at p. 1. Hatchel maintains that he has stated a colorable claim against Miller and D&D. *Id.* at p. 2. Miller had the duty to supervise the safety of the people at the location, and he failed to do so. *Id.* To fulfill that duty, Miller utilized well-site supervisors and safety personnel. *Id.* at p. 4. Simmons and Saunders are two of the individuals that Miller supervised. *Id.* Neither Miller nor the people he supervised were present for the safety meeting prior to the rig walk. *Id.* at p. 7. Even if Miller is not present at a specific rig, Hatchel alleges, pointing to Miller's deposition, that Miller was in charge of overseeing all drilling phases and well site supervisors. *Id.* Further, in Miller's deposition, Miller testified that, even if he was off site, Simmons was acting under his authority and instructions. *Id.* Stop work authority was never exercised during the incident, and Miller testified that he would have used it and that it should have been used by one of his supervisors that was on site. *Id.*

Finally, Hatchel contends he has "had to fight for every piece of information in this case." *Id.* at p. 9. He first requested to take the deposition of Miller in May of 2024, but he was not able to depose him until September. *Id.* Prior to that deposition, Hatchel did not have a "good faith basis to sue [Miller, Simmons or Saunders]." *Id.*

Briefing is complete. Accordingly, the matter is ripe.

## Law & Analysis

### I.    Leave to Amend

Rule 15 provides that leave to amend shall be "freely [granted] when justice so requires." FED. R. CIV. P. 15(a)(2).  This rule is circumscribed, however, by 28 U.S.C. § 1447(e) which states that "[i]f after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State court."  28 U.S.C. § 1447(e); *Ascension Enters., Inc. v. Allied Signal, Inc.*, 969 F. Supp. 359, 360 (M.D. La. 1997) (Section "1447(e) trumps Rule 15(a).").

Under these circumstances, courts are required to "scrutinize [the] amendment more closely than an ordinary amendment."  *Hensgens v. Deere & Co.*, 833 F.2d 1179, 1182 (5th Cir. 1987).  Specifically, the court must balance the defendant's interest in maintaining a federal forum, with the competing interest of avoiding parallel lawsuits by considering the following "*Hensgens* factors,"

> [1] the extent to which the purpose of the amendment is to defeat federal jurisdiction, [2] whether the plaintiff has been dilatory in asking for amendment, [3] whether plaintiff will be significantly injured if amendment is not allowed, and [4] any other factors bearing on the equities. The district court, with input from the defendant, should then balance the equities and decide whether amendment would be permitted. If it permits the amendment of the non-diverse defendant, it must remand to the state court. If the amendment is not allowed, the federal court maintains jurisdiction.

*Wilson v. Bruks-Klockner, Inc.*, 602 F.3d 363, 367-68 (5th Cir. 2010) (citation omitted).

One issue that often is considered within the *Hensgens* rubric is whether plaintiff has a reasonable possibility of recovery against the non-diverse defendant(s).  For example, a plaintiff will not be "significantly injured" under *Hensgens* by a court's denial of leave to add a clearly meritless claim.  *Id.* at 368.  Thus, the Fifth Circuit has held that it lies within a district court's "discretion" to deny a proposed amendment as futile, if there is no reasonable basis to predict that plaintiff will be able to recover against the would-be, non-diverse defendant.  *Id.*

An earlier Fifth Circuit panel made it clear that "[a] request to join a party against whom recovery is not really possible and whose joinder would destroy subject matter jurisdiction (*i.e.*, a request fraudulently to join a party) would *never* be granted."  *Cobb v. Delta Exports, Inc.*, 186 F.3d 675, 678 (5th Cir. 1999) (emphasis added).[2]  In other words, the party opposing joinder has the opportunity to prevent joinder by demonstrating that plaintiff has no "colorable claim" against the proposed defendant.  *Id.*  This presents a potentially dispositive threshold issue, for if plaintiffs fail to state a colorable claim, then the court cannot permit amendment.  *Id.*

When deciding whether plaintiffs state a colorable claim for relief against the non-diverse defendant(s), the district court may permit "limited discovery into 'discrete and undisputed facts' that had been omitted from the complaint and that might preclude recovery against the in-state defendant . . ."  *Wilson*, 602 F.3d at 373 (citing *Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568, 573-74 (5th Cir. 2004)).

Before the Court can address whether Hatchel has asserted a colorable claim against Miller and D&D, Palms Insurance and Trinity Operating have put at issue whether Miller and D&D are

---

[2] The court added that because the improper joinder doctrine (f/ka the "fraudulent joinder doctrine") applies only to those non-diverse parties on the record in state court at the time of removal, it necessarily does not apply to post-removal joinders.  *Cobb*, 186 F.3d at 677.

truly non-diverse defendants. As the determination of which standard to apply depends on whether Miller and D&D are non-diverse defendants, the Court will address this issue first.

### (a) Miller's Citizenship

The diversity jurisdiction statute presupposes a civil action between "citizen of different states," where all plaintiffs are diverse from all defendants. 28 U.S.C. § 1332; *Farrell Const. Co. v. Jefferson Par., La.*, 896 F.2d 136, 139-40 (5th Cir. 1990). In other words, no party on one side of a case may be a citizen of the same state as any party on the other side. *Mas v. Perry*, 489 F.2d 1396, 1399 (5th Cir. 1974) (citation omitted).

Hatchel alleges that Miller is domiciled in Louisiana. In his proposed Third Amended Complaint, Hatchel asserts that Miller is "domiciled in the State of Louisiana." [doc. #102-2, p. 2]. Palms Insurance and Trinity Operating argue that Miller testified that he is in the process of moving back to Louisiana, but when asked his current address, he provided a Texas address. [doc. #112, p. 3]. It remains uncontroverted that Hatchel is a citizen of Louisiana for purposes of diversity. Thus, if Miller is also a citizen of Louisiana, his addition as a Defendant will destroy diversity.

To determine Miller's citizenship, the Court will look to his citizenship at the time the Motion for Leave to File Third Amended Complaint for Damages was filed. The plaintiff is "'the master of the complaint.'" *Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22, 35 (2025) (quoting *Caterpillar Inc. v. Williams*, 482 U.S. 386, 398-99 (1987)). If a plaintiff amends his complaint, the new pleading supersedes the old one, and the original pleading no longer performs "any function in the case." *Id.* "So changes in parties, or changes in claims, effectively remake the suit. And that includes its jurisdictional basis: The reconfiguration accomplished by an

12

amendment may bring the suit either newly within or newly outside a federal court's jurisdiction." *Id.* at 35-36. "[A]n amendment can either destroy or create jurisdiction in an original diversity case. The addition of a non-diverse party in such a case typically destroys diversity, requiring the case's dismissal." *Id.* at 37 (citing *Owen Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 374-77 (1978)).

"An Amended Complaint attached to a Motion for Leave is deemed filed as of the date of filing for the Motion for Leave."[3] *Baker v. Amazon Logistics, Inc.*, No. CV 23-3991, 2024 WL 5386550, at *4 (E.D. La. Aug. 21, 2024); *see also Culley v. McWilliams*, No. 3:20-CV-0739-E-BH, 2021 WL 1799431, at *11 (N.D. Tex. Apr. 14, 2021). Thus, if the undersigned grants leave to file this Third Amended Complaint, it will be as if it was filed on January 3, 2025.

To be considered a citizen of a state under § 1332, a natural person must be both a citizen of the United States and a domiciliary of that state. *Mas*, 489 F.2d at 1399 (citations omitted). Thus, for purposes of diversity, "citizenship means domicile; mere residence in the State is not sufficient." *Id.* (citations omitted). "A person's domicile is the place of his true, fixed, and permanent home and principal establishment, and to which he has the intention of returning whenever he is absent therefrom . . ." *Id.* (citations and internal quotation marks omitted). "A change in domicile typically requires only the concurrence of: (1) physical presence at the new location and (2) an intention to remain there indefinitely . . ." *Coury v. Prot*, 85 F.3d 244, 250 (5th Cir. 1996) (citations omitted). A party attempting to show a change in domicile assumes the burden of going forward on that issue. *Id.* Nevertheless, as always, the ultimate burden of establishing jurisdiction rests with the party invoking federal jurisdiction. *Id.*

---

[3] Of course, an amended complaint is only filed into the record if leave to amend is granted.

In determining a party's domicile, the court must address a variety of factors; no individual factor is determinative. *Id.* at 251. The relevant factors include, but are not limited to, "the places where the litigant exercises civil and political rights, pays taxes, owns real and personal property, has driver's license and other licenses, maintains bank accounts, belongs to clubs and churches, has places of business or employment, and maintains a home for his family." *Id.*

During his deposition, taken in September of 2024, Miller testified that he was building and moving into a home in Iota, Louisiana, where his wife and two dogs currently reside with him. [doc. #113-1]. He also testified that he plans to remain in the Iota home permanently, which is an important indicator of his intent and a key part of the domicile analysis. *Id.* Miller holds a driver's license with a Louisiana address, though it is unclear whether the license was recently issued or simply unexpired. [doc. #111-4]. Even if the license was not recently issued, it remains significant that he did **not** apparently obtain a Texas driver's license, but retained the one issued by the State of Louisiana. Further, even if the Court were to disregard the license, the facts that Miller owns real property, maintains a home for his family, and has expressed an intent to remain in Louisiana is enough to establish domicile. Miller's recitation of an address in Cypress, Texas, during his deposition is not sufficient, standing alone, to be determinative. A person's domicile is not altered, particularly where, as here, the individual has a permanent home in Louisiana, has relocated his family there, and intends to remain indefinitely. Furthermore, it is notable that Hatchel's testimony—and listing of a Cypress, Texas address--was four months prior to the filing of his motions.[4] On balance, the *Coury* factors weigh in favor of finding that Miller's citizenship is in Louisiana.

---

[4] Miller's testimony was given in September 2024, several months before Hatchel filed the Motion for Leave to Amend on January 3, 2025. At the time of his testimony, Miller stated that he and his

Accordingly, the Court finds that Miller's citizenship is in Louisiana, which makes him a non-diverse defendant.

*(b) D&D's Citizenship*

The Court notes that Hatchel seeks to add two Defendants: Miller and D&D. D&D is a limited liability company, but Hatchel fails to allege either the identity of its members or their citizenship in his proposed Third Amended Complaint. The Fifth Circuit has repeatedly held that the "citizenship of an LLC is determined by the citizenship of its members." *Megalomedia Inc. v. Philadelphia Indem. Ins. Co.*, 115 F.4th 657, 659 (5th Cir. 2024). In the proposed Third Amended Complaint, Hatchel alleges only that D&D is a "Louisiana corporation not authorized to do business in the State of Louisiana that can be served with process through its registered agent, Donald Miller, 1182 Howard Road, Iota, Louisiana 70543." [doc. #102-2].

The Court can take judicial notice of records from the Louisiana Secretary of State's website, *see Walker v. Beaumont Independent School District*, 938 F.3d 724, 735 (5th Cir. 2019), which recognizes Miller as a member of D&D. Although Defendants Trinity Operating and Palms Insurance correctly note that D&D is listed as inactive, the company was not declared inactive until October 22, 2020. The incident at the root of this case occurred on September 24, 2020. Moreover, Miller testified that he owns D&D Miller Consulting, LLC. [doc. #113-1, p. 5]. The Court has already determined that Miller is a citizen of Louisiana. Because an LLC's citizenship is determined by the citizenship of each of its members, and because even a single non-diverse

_____

wife had "just built a brand new house" and that they would be "fully moved in" within the next few months. [doc. #113-1]. When asked when they began moving back, Miller responded "[w]e just started a few months back." *Id.* The house was also completed at the time of Miller's deposition. *Id.* This testimony strongly suggests that by the time motion was filed, Miller and his wife had either completed or nearly completed their move to Louisiana, further supporting the conclusion that Miller was domiciled in Louisiana at the relevant time.

member destroys complete diversity, Miller's Louisiana citizenship renders D&D a non-diverse party.

### (c) Colorable Claim

The undersigned next determines whether Hatchel has stated a colorable negligence claim against Miller and D&D.  Under Louisiana law, "[e]very act whatever of man that causes damage to another obliges him by whose fault it happened to repair it."  LA. CIV. CODE art. 2315.  "Fault is a breach of duty owed by one party to another under the particular facts and circumstances of a given case." *Broussard v. Northcott Expl. Co.*, 481 So. 2d 125, 128 (La. 1986).  Fault encompasses any conduct that falls below the standard of care that would be exercised by a reasonable person. *See Landry v. Bellanger*, 2002-1443 (La. 2003), 851 So. 2d 943, 949; *Esco v. Smith*, 468 So. 2d 1169, 1174 (La. 1985).

A plaintiff seeking to establish negligence under Louisiana law must prove each of five elements: (1) the defendant had a duty to conform his conduct to a specific standard of care (duty); (2) the defendant's conduct failed to conform to the appropriate standard of care (breach); (3) the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries (the cause-in-fact); (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries (scope-of-duty); and (5) actual damages. *Nagle v. Gusman*, 61 F. Supp. 3d 609, 620 (E.D. La. 2014) (citing *S.J. v. Lafayette Par. Sch. Bd.*, 2009-2195 (La. 2010), 41 So. 3d 1119, 1125.

Although Miller and D&D are referred to collectively throughout the proposed Third Amended Complaint, the Court must evaluate whether Hatchel has alleged a viable claim against Miller personally and against D&D.  [doc. #102-2, p. 4].  As a general proposition, "the law considers an LLC and the member(s) comprising the LLC[] as being wholly separate persons."

16

*Ogea v. Merritt*, 2013-1085 (La. 12/10/13), 130 So. 3d 888, 894.  Hatchel may pursue a cause of action against Miller personally only if his claims arise from "any breach of professional duty or other negligent or wrongful act."  *Id.* at 897.  To determine if an act could be considered "negligent," one factor the Supreme Court of Louisiana has told courts to consider is "whether a member's conduct could be fairly characterized as a traditionally recognized tort."  *Id.* at 900-01.  "[I]f a traditional tort has been committed against any cognizable victim(s), that situation weighs in favor of the 'negligent or wrongful act' exception and in favor of allowing the victim(s) to recover against the individual tortfeasor(s)."  *Id.* at 901.

Hatchel seeks to hold Miller and D&D accountable for their own conduct in (1) failing to conduct a safety meeting; (2) failing to properly design and lay out the location for the rig walk; (3) failing to ensure the oilfield equipment was properly placed; and (4) failing to conduct an inspection of the rig and its equipment. [doc. #102-2, pp. 9-10].  Miller had the duty to ensure the health and safety of all persons on site at each of the rigs, and he was in charge of supervising all drilling phases, operations, and the actual well site supervisors.  [doc. #102-2, p. 5].

First, Hatchel has stated a colorable claim against Miller for negligence.  As the consultant responsible for supervising drilling operations and ensuring safety at multiple rig sites, Miller owed a duty to provide a reasonable, safe work environment.  Hatchel has alleged that Miller failed to conduct safety meetings, inspect equipment, and ensure proper oversight of the rig site.  New Tech argues that Miller was present at a different rig at the time of the accident, but that does not alter the analysis.  Miller's responsibilities extended beyond physical presence, and his failure to implement and enforce appropriate safety procedures may still constitute a breach of duty.  Miller's breach of duty could be a cause in fact of Hatchel's injuries, particularly if a properly managed

safety protocol would have prevented the incident. Taken as a whole, the factual allegations and record support a colorable claim of negligence against Miller.

Notably, in *Esco v. Smith*, the court found that a superintendent was personally liable for the plaintiff's injuries due to his failure to ensure a safe working environment. 468 So. 2d 1169, 1176 (La. 1985). The defendant's responsibilities included implementing safety policies and overseeing the day-to-day job operations. *Id.* Similarly, Miller had the authority and responsibility to implement safety protocols and oversee day-to-day drilling operations. [doc. #102-2, p. 5]. Like the defendant in *Esco*, Miller's alleged failure to supervise, inspect, and hold safety meetings supports a colorable negligence claim against him personally.

Second, it appears Hatchel has also asserted a colorable claim against D&D. The entity entered into a contract with New Tech to provide services discussed above. Further, D&D could act only through Miller. The Court has found the allegations and record sufficient to assert a claim against Miller personally. Therefore, D&D, too, is potentially liable to Hatchel for negligence.[5]

Finally, the Court notes that this is not a case involving traditional vicarious liability between an employer and an employee. Here, Miller and D&D were not employed by New Tech but were instead independent contractors. The Consultant Agreement between D&D and New Tech expressly states that "[D&D] shall serve as an independent contractor" and that New Tech "retain[s] no right to control [D&D]'s performance of the [w]ork." [doc. #103-4, p. 1]. It further provides that D&D was not to "hold itself out to be an employee of [New Tech]." *Id.* at p. 3.

---

[5] It is not clear whether D&D is still an active LLC at this time. While the records of the Secretary of State demonstrate D&D was active at the time of the incident at question, it remains unclear if D&D was active at the time of filing this Motion to Amend. Therefore, if Hatchel could not pursue Miller personally, he might be prevented from obtaining relief from these potential tortfeasors at all.

Because no employer-employee relationship exists, the doctrine of vicarious liability does not apply. Hatchel is not attempting to impute liability to Miller based on actions taken within the scope of employment but instead asserts that Miller himself and D&D acted negligently in fulfilling their independent responsibilities.

Accordingly, the Court finds that Hatchel has stated a colorable claim against both Miller and D&D.

### (d) Hensgens Consideration

Having found that a colorable claim has been stated against Miller and D&D, the undersigned now turns to the *Hensgens* factors.

### (1) Whether the purpose of the amendment is to defeat federal jurisdiction

In analyzing the first factor, courts have considered "whether the plaintiffs knew or should have known the identity of the non-diverse defendant when the state court complaint was filed," *Schindler v. Charles Schwab & Co., Inc.*, No. CIV.A.05-0082, 2005 WL 1155862, at *3 (E.D. La. May 12, 2005), and whether the plaintiff has stated a valid or colorable claim against the non-diverse defendant. *See, e.g.*, *Diamond McCattle Co. v. Range Louisiana Operating,* No. 3:18-CV-00229, 2018 WL 6728587, at *4 (W.D. La. Dec. 21, 2018). "A plaintiff's possession of a valid claim suggests that the purpose of a proposed amendment is not to defeat diversity." *Benferhat v. Hanger Prosthetics & Orthotics Inc.*, No. 6:24-CV-00658, 2024 WL 4417391, at *2 (W.D. La. Oct. 4, 2024) (citing *Tillman v. CSX Transp., Inc.,* 929 F.2d 1023, 1029 (5th Cir. 1991)); *Allen v. Walmart Stores, L.L.C.,* 907 F.3d 170, 186 (5th Cir. 2018).

In this case, no evidence has been presented that Hatchel understood Miller or D&D's significant roles at the time the Petition was filed or even when he filed the First Amended Complaint.  [docs. # 1 & 54].   Further, the undersigned has concluded that Hatchel has a colorable claim against Miller and D&D.  The undersigned finds that the purpose of the proposed amendment does not appear to be to defeat diversity jurisdiction.   Thus, this factor weighs in favor of amendment.

(2) <u>Whether Hatchel was dilatory in seeking to amend</u>

The second *Hensgens* factor is whether plaintiff has been dilatory in requesting the amendment.  *Hensgens*, 833 F.2d at 1182.  In analyzing the second factor, courts consider "the amount of time that has passed between the plaintiff's motion to amend and the filing of the original petition and notice of removal," as well as "the procedural posture of the case, particularly whether 'trial or pre-trial dates were scheduled,' or any 'significant activity beyond the pleadings stage has occurred.'"  *Anzures v. Prologis Tex. I LLC*, 886 F. Supp. 2d 555, 565 (W.D. Tex. 2012) (quoting *Arthur v. Stern*, No. 07-3742, 2008 WL 2620116, at *5 (S.D. Tex. June 26, 2008)).

No defendant has technically opposed these motions on the basis that Hatchel was dilatory in seeking to join Miller and D&D.  New Tech does argues that Hatchel had ample time to add Miller and D&D after Trinity Operating identified Miller as the superintendent in its initial disclosures.  [doc. #111].   Hatchel has noted the difficulty in obtaining discovery in this matter and further explained that he did not understand the role Miller and D&D had until after Miller's deposition.  Pointing again to the difficulties in obtaining discovery, Hatchel notes that he tried to take Miller's deposition in May of 2024, he was not able to obtain mutually agreeable deposition dates until September of 2024.

Shortly after the deposition, in October of 2024, Hatchel informed the Court and Defendants that he intended to seek leave to add multiple defendants, including Miller and D&D. At the Court's direction, Hatchel filed two separate motions, one to add diverse defendants and the current pending motion for leave to amend.

First, the undersigned does not find that Hatchel was dilatory prior to October of 2024. In addition to the issue of scheduling Miller's deposition, the undersigned would note that she ruled on Hatchel's Motion to Compel in April 2024. At that time, Hatchel was still seeking contracts, if any, between Trinity Operating and Miller. [doc. #76]. Miller's status was certainly not clear to the Court or to Hatchel at that time, and New Tech, the entity with which Miller and D&D did have a contract, had only been added as a defendant in early April 2024. Second, to the extent that there has been further delay, the undersigned directed the parties to proceed as they did, so that delay should not be held against Hatchel.

Accordingly, Hatchel has not been dilatory in seeking to join Miller and D&D to this case, and this factor favors amendment.

### (3) Whether Hatchel will suffer significant injury if amendment is denied

Hatchel argues that he will be significantly injured in two ways if Miller and D&D are not joined: (1) the other Defendants might point the fault to Miller and D&D, and if they are not joined, it could be detrimental; and (2) Hatchel would have to try an entirely separate case in state court. [doc. #103-1].

New Tech responds that Hatchel will not be injured because he seeks to add a clearly meritless claim. [doc. #111, p. 17].

As discussed above, the Court finds that Hatchel has stated a colorable claim against Miller and D&D, and thus, these defendants are indispensable parties.  *See* FED. R. CIV. P. 19(a)(1).  This is not a situation of vicarious liability between an employer and employee.  In that context, the Louisiana doctrine of vicarious liability renders employees who are alleged to have acted within the course and scope of their employment as unnecessary parties.  That is not the case here.  Miller and D&D were contracted by New Tech, not employed.  In D&D and New Tech's Consultant Agreement, it states that "[D&D] shall serve as an independent contractor;" and that "[New Tech] retain[s] no right to control [D&D]'s performance of the [w]ork."  [doc. #103-4, p. 1].  D&D was also not to "hold itself out to be an employee of [New Tech]."  *Id.* at p. 3.  Since there is no employee or employer relationship here, and Hatchel has stated a colorable negligence claim against Miller and D&D, Hatchel risks injury if the Court does not allow their joinder.  Moreover, in the interest of judicial economy, resolving all related claims in a single proceeding promotes efficiency and avoids inconsistent judgments.  Accordingly, on balance, this factor weighs in favor of amendment.

### (4) Consideration of other lingering equity factors

Denying the motion would likely lead to parallel proceedings, which would unnecessarily burden the court, the parties, and potential witnesses, and could result in inconsistent rulings.  Furthermore, the scheduling order has been vacated, so there are currently no discovery deadlines in place or a trial date set.  While Defendants have an interest in retaining a federal forum, Hatchel has an equal interest in returning to the state forum he originally chose.  In short, the equities—as well as the other *Hensgens* factors—favor amendment.

In sum, the undersigned concludes that that the *Hengens* factors, when considered in their totality, weigh in favor of allowing the proposed amendment to add Miller and D&D. Accordingly, **IT IS ORDERED** that the Motion for Leave to File Third Amended Complaint is **GRANTED**.

## II.    Remand

"If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). The joinder (or substitution) of a non-diverse defendant destroys the court's subject matter jurisdiction. *Cobb*, 186 F.3d at 677. Once joinder is permitted, then remand to state court is not merely discretionary, it is mandatory. 28 U.S.C. § 1447(e); *Hengens*, 833 F.2d at 1182 (if amendment is permitted, the court must remand the whole case to state court). The undersigned has ordered the joinder of Miller and D&D, who are non-diverse defendants. As a result, remand is necessary.

<u>Conclusion</u>

For the above-assigned reasons,

**IT IS ORDERED** that Plaintiff Christopher Hatchel's Motion for Leave to File Third Amended Complaint for Damages [doc. #102] is **GRANTED**.[6]

**IT IS RECOMMENDED** that Plaintiff Christopher Hatchel's Motion to Remand [doc. #103] be **GRANTED** and that the above-captioned cause be remanded to the First Judicial District Court for the Parish of Caddo, State of Louisiana. 28 U.S.C. § 1447(e).

---

[6] As this motion is not excepted in 28 U.S.C. § 636(b)(1)(A), nor dispositive of any claim on the merits within the meaning of Rule 72 of the Federal Rules of Civil Procedure, this ruling is issued under the authority thereof, and in accordance with the standing order of this court. Any appeal must be made to the district judge in accordance with Rule 72(a).

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and FED. R. CIV. P. 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for an extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

In Chambers, at Monroe, Louisiana, on this 15th day of May, 2025.

KAYLA DYE MCCLUSKY
UNITED STATES MAGISTRATE JUDGE